IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CRIMINAL NO. 3:21-CR-9 (CAR) |
| | : |
| CEDDRICK DEMON MERCERY, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SEVERANCE OF COUNTS**

The United States of America ("the Government"), through undersigned counsel, hereby responds to the motion for severance of counts filed in the above-styled case by Defendant Ceddrick Demon Mercery a/k/a "Stunt" (hereinafter "Defendant"). In his motion, Defendant requests a separate trial on all counts contained in the three-count Superseding Indictment. Defendant argues that "joining these counts together threatens [his] right to a fair trial." Doc. 32 at 1. For the reasons shown below, Defendant's motion should be denied.

**PROCEDURAL HISTORY**

On February 10, 2021, Defendant was indicted for two counts of Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Doc. 1. Defendant's initial appearance and arraignment were held on February 25, 2021. Following his arraignment, the Government moved for detention, which was granted by U.S. Magistrate Judge Charles H. Weigle on the same date. Doc. 10. On July 8, 2021, the Grand Jury sitting in the Middle District of Georgia returned a Superseding Indictment which contained one additional count (Count 3) of Possession of a Firearm by a Convicted Felon in violation of

Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). On September 3, 2021, Defendant filed a Motion to Suppress and Motion for Severance of Counts. Doc. 31 and 32.

## FACTUAL BACKGROUND[1]

Based upon Defendant's contention that due to "the unique (and distinct) facts at issue in each count, a joint trial will create a specific and substantial risk of unfair prejudice" the Government feels obligated to provide a very detailed factual background for each count contained in the Superseding Indictment. However, the facts provided below are not necessarily in chronological order or in the order in which the crimes are charged in the Superseding Indictment. Rather, the facts are presented in the order that they were discovered and/or developed during the course of the investigation.

On September 23, 2020 at approximately 2:40 a.m., two individuals, Michael Wilson and John Boyd, were lawfully attempting to repossess a white 2011 Honda Accord when the driver and lone occupant of the Honda Accord fired multiple gunshots at them. Athens-Clarke County Police Department ("ACCPD") Officer Robert Bailey was one of the first responding officers to the shooting scene and he documented his interview of the victims as follows:

> On 9/23/2020, I responded to 117 Loblolly RD in reference to an aggravated assault. Before my arrival to the scene central advised me, the victims were trying to complete a repossession of a white in color 2011 Honda Accord. When I arrived on scene, I met with the victims Michael Wilson and John Boyd. They advised the following happened: They came down from Atlanta to repossess the vehicle, and that the vehicle is equipped with a GPS tracker and they had a key for the vehicle. They advised the owner of the vehicle Jessica Harris was unaware that the vehicle was going to be repossessed, but she is aware that it is equipped with a GPS tracker and that they have a copy of the vehicle's key. They tracked the vehicle to several locations here in Athens. They first tried to repossess the vehicle on Berlin St. but did not feel safe trying to repossess it at that location. They tracked it to 115 Loblolly RD. where it had been sitting idle for approximately forty minutes. They

---

[1] This summary is taken from law enforcement reports, photographs, and recordings, which have been served upon defense counsel during the discovery process. The United States expects that law enforcement witnesses will testify consistently with these facts during an evidentiary hearing or trial of this case.

2

were unsure if the vehicle was occupied or unoccupied. They began to walk towards the vehicle to start the repossession when the vehicle started up. Wilson yelled to the driver that we are here to repossess the vehicle. At that time, the driver put the vehicle in drive and speed off almost striking Wilson and Boyd. They had to jump out of the way to avoid being struck by the vehicle. The vehicle went towards Freeman Dr., made a wide right turn, and stopped at the beginning of the road. The driver then rolled down the passenger side window and fired three rounds at both Boyd and Wilson. Boyd stated that he jumped into the woods to not be struck by a round and Wilson laid down on the ground to avoid [being] struck. I was able to locate three 40mm shell casings on Freeman DR where Boyd advised the car had stopped at and began firing rounds at them. I took photos of the shell casings. The vehicle and the suspect had left the scene before my arrival.

Shortly after the shooting, ACCPD Officer Jason Castels was traveling on Commerce Road when he observed a white Honda Accord pass him heading south. Officer Castels made a U-turn and pulled behind the Accord at the traffic light on Commerce Road and Outer Loop 10 in Athens. Officer Castels attempted to conduct a traffic stop on the vehicle, but the Accord fled at a high rate of speed. The Accord turned into Bethel Homes and traveled at approximately 50 mph through the complex. The driver of the vehicle, who Officer Castels described as "a black male that was approximately 6 feet tall and weighed 150 pounds," successfully fled from the vehicle on foot and ran through the complex.

Officers searched the abandoned Accord and located "two rocks" of heroin, .5 grams of suspected methamphetamine, a straw used to ingest drugs, and $140 in cash. Moreover, officers located 10 pieces of mail addressed to the Defendant. Officer Castels viewed a photograph of the Defendant and positively identified him as the individual who fled from the Honda Accord. Officer Castels was wearing a body camera during the vehicle and foot pursuit. The body camera footage shows an individual matching Defendant's gender, race, height, and physical stature fleeing from the Honda Accord. A screenshot from the body camera footage is displayed below:



In ACCPD Officer Bailey's report, he also noted further evidence showing that Defendant was the driver of the Accord. For instance, Officer Bailey documented that "[t]he owner of the vehicle's sister showed up on scene and advised her cousin was using the vehicle and had lent it to Mercery. She also advised that Mercery is a close family friend of theirs." Additionally, it was learned after the shooting that the residence located at 115 Loblolly Road where the Honda Accord was parked when the "repo men" initially encountered the Defendant sitting in the car was the residence of Defendant's grandmother, Odessa "Bessie" Mercery.

On September 24, 2020, ACCPD Officer Hunter Lance responded to the area of College Avenue at Monroe Street in reference to a call initiated after an Athens-Clarke County Streets & Drainage Division employee found a Taurus .40 caliber pistol, Model: G2C, Serial Number: AAM123496, on the ground at the base of a tree in front of an apartment building located at 892 College Avenue in Athens. The firearm was loaded with a bullet in the chamber and 3 bullets in the magazine. Officer Lance noted in his report that the "firearm was very dirty with mud/dirt in different crevices of the firearm such as the grip and where the slide and frame meet. The firearm was found lying upon a tree base/root system and seemed to have been thrown with enough force

4

to make it bounce to the position it was found because the base of the tree did not have the dirt/mud that covered the firearm."

More importantly, the firearm was found in an area of Athens that the white Honda Accord drove past on College Avenue as it fled from the scene of the shooting towards Bethel Homes. It appeared to officers that the gun was thrown out the vehicle's window as Defendant was fleeing down College Ave., which would explain why the gun had enough momentum to bounce off the muddy ground and land at the base of the tree.

Photo below shows the Taurus .40 caliber pistol covered in mud after it was recovered in front of College Avenue in Athens

The yellow arrow below shows the approximate spot where the Taurus pistol was located

The recovered Taurus .40 caliber pistol was sent to the FBI laboratory in Quantico, Virginia. FBI latent prints examiner Erik Carpenter located on the gun's magazine a fingerprint suitable for comparison. Carpenter positively identified the print as belonging to the Defendant.[2] The FBI laboratory then conducted ballistics testing and determined that the recovered Taurus pistol discharged the three (3) .40 caliber shell casings collected at 117 Loblolly Road.

On October 16, 2020, Derrica Mitchell reported to ACCPD officers that her boyfriend, Defendant Ceddrick Mercery, had physically assaulted her and tried to force her to perform acts of sodomy at gunpoint. During a video recorded interview with an ACCPD Domestic Violence Unit detective, Mitchell described the firearm that the Defendant used against her as a pistol with an extended magazine and a "beam." During her interview, Mitchell also disclosed that the Defendant was responsible for "shooting at repo men" and then running from the police in Bethel Homes. ACCPD detectives photographed Mitchell's physical injuries and then obtained state warrants charging the Defendant with aggravated assault with a firearm, aggravated assault by strangulation, battery, false imprisonment, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and attempted aggravated sodomy.

ACCPD officers were unable to locate the Defendant to place him under arrest for the state warrants issued after the 9/23/2020 attempted shooting and the 10/16/2020 assault of Derrica Mitchell. However, on October 21, 2020 an FBI confidential source provided ACCPD Sgt. Dana Frost a phone number for the cell phone that the Defendant was using. Sgt. Frost obtained a search warrant from the Athens-Clarke County Superior Court that authorized law enforcement to track the geolocation of Defendant's cell phone, which ultimately led officers on October 26, 2020 to an apartment in Athens rented by Shownica Hull.

---

[2] FBI examiner Nicole Cover conducted a "blind verification" and also positively identified the print as belonging to Ceddrick Mercery.

Officers contacted Shownica Hull by phone and requested that she exit her apartment. Once Hull was outside her apartment, she told officers that "Stunt" (Defendant) was inside her apartment with two other adult males, Terrence Arnold and Fredrick Brown. Hull also informed officers that Defendant was pacing back-and-forth in her apartment while holding a pistol and complaining about the presence of the police outside the apartment. ACCPD officers called Terrence Arnold's cell phone and he, Fredrick Brown, and the Defendant agreed to exit the apartment. After exiting the apartment, Defendant was immediately taken into custody on the outstanding state arrest warrants.

Hull provided agents verbal and written consent to search her apartment. A black Glock .40 caliber pistol, Model: 22, Serial Number: DLM710, was located on top of a kitchen cabinet. The Glock was loaded with a bullet in the chamber, and it had an extended magazine. The pistol was also equipped with a laser sight. A dining room chair was positioned near the kitchen cabinet, which appeared to officers to indicate that the firearm was recently placed on top of the cabinet. The Glock was the only firearm located inside the residence.



Photograph of Glock pistol as it was found in Shownica Hull's kitchen on 10/26/2020



Photograph taken by police of Glock pistol after it was seized on 10/26/2020

The Glock pistol recovered from Hull's kitchen matched the description of the gun provided by Derrica Mitchell that she said Defendant used in assaulting her on October 16, 2020. Defendant's cell phone that agents tracked to Hull's apartment was found broken in pieces and discarded in a toilet. It was clear to agents that Defendant attempted to destroy and flush the phone prior to exiting the apartment. Although the phone was broken, agents were able to confirm that it was in fact Defendant's phone based upon an electronic identifier contained on the phone.



The seized Glock pistol was sent to the FBI laboratory in Quantico, VA, where it was tested for DNA. A swabbing of the textured area of the pistol's grip revealed the presence of male DNA, which "was interpreted as originating from three individuals." When the DNA from the pistol was

compared to the DNA from Defendant's buccal swab, FBI DNA Casework Unit Examiner Elizabeth Talley concluded that the DNA located on the pistol grip was "210 octillion times more likely if MERCERY and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors." In layman's terms, Defendant's DNA was located on the Glock pistol seized from Shownica Hull's apartment.

| Person of Interest (POI) | Likelihood Ratio (LR)[4] | Level of Support[5] |
|---|---|---|
| MERCERY | $2.1 \times 10^{29}$ (210 octillion) | Very Strong Support for **Inclusion** |

On November 16, 2020, ACCPD Sgt. Dana Frost obtained a warrant from the Athens-Clarke County Superior Court to search Defendant's Instagram account. The electronically stored information received from Instagram pursuant to the warrant provided additional evidence that directly connected Defendant to the seized Glock .40 caliber pistol recovered from Hull's apartment. Of particular significance were photographs and videos that Defendant upoloaded to his Instagram account showing him in possession of what appeared to be the exact same gun recovered from the top of Hull's kitchen cabinets on October 26, 2020. Displayed below are a few screenshots taken from videos found on Defendant's Instagram account:



Defendant holding what appears to be a Glock pistol with an extended magazine, which is identical in appearance to the pistol seized from Hull's apartment



In this screenshot, the extended magazine is clearly visible



The screenshot above taken from a video on Defendant's Instagram account clearly shows Defendant holding a large bore caliber pistol, such as a .40 caliber, which appears to be a Glock with an attached laser sight

Sgt. Frost also located various videos and photos posted to Defendant's Instagram account which showed Defendant and Derrica Mitchell on August 25, 2020 at an indoor shooting range. In one of the videos, while he was holding what appeared to be an AR-15 style rifle, the Defendant boasted into the camera "this is an automatic AR, I'm going to test this motherf*cker out before I buy it." Sgt. Frost recognized the shooting range where the video was recorded as being the Athens Gun Club, located at 115 Mill Center Blvd., Athens, GA.

On February 1, 2021, Sgt. Frost went to the Athens Gun Club for the purpose of examining the liability waivers that customers are required to sign to use the firing range. Sgt. Frost located a waiver signed by Derrica Mitchell dated August 25, 2020, and directly behind Derrica Mitchell's waiver was a wavier signed by "Christopher Middlebrooks." A closer examination of Christopher

10

Middlebrooks' waiver revealed a scratched-out signature for what appeared to be the partial name "Cedric Mer."[3]  The emergency contact listed for Christopher Middlebrooks (Defendant) was "Odessa Mercery."  Sgt. Frost located a 2012 ACCPD incident report (Report No. 12-12-0086) in which Odessa Mercery was listed as Defendant's grandmother.

Sgt. Frost also noticed that the Christopher Middlebrooks' waiver showed that the range fee was paid for two individuals, as well as the rental of a machine gun.  Sgt. Frost spoke with the manager of Athens Gun Club and determined that the gun club owns and rents only one gun matching the firearm that the Defendant was holding in the video.  Sgt. Frost examined and photographed this rifle and determined that it was identical to the rifle Defendant was holding in the Instagram video.


Photograph showing Derrica Mitchell and Defendant at the Athens Gun Club


Screenshot of Instagram video showing Defendant holding rifle






MK18 5.56 NATO caliber rifle (as it appeared when Sgt. Frost examined it at the Athens Gun Club on 02/01/2021)

---

[3] Defendant is known to spell his first name as "Cedric," which would explain the spelling on the liability waiver.  In fact, "Cedric" appears to be how Mercery most commonly spells his name, but his legal first name is "Ceddrick," and the name that listed in the superseding indictment.

11

**Athens Gun Club liability waiver forms signed by Defendant (using the alias "Christopher Middlebrooks") and Derrica Mitchell on August 25, 2020**

**ARGUMENT AND CITATIONS OF AUTHORITY**

**I.   DEFENDANT'S MOTION FOR SEVERANCE OF COUNTS SHOULD BE DENIED.**

Defendant requests that the Court sever all three counts contained in the Superseding Indictment and grant him three separate trials. In support of this request, Defendant argues that trying all "three counts together threatens Mr. Mercery's right to a fair trial," due to "the unique (and distinct) facts at issue in each count, a joint trial will create a specific and substantial risk of unfair prejudice." Doc. 32 at 1. Defendant's argument is unpersuasive and completely lacking in merit.

Federal Rule of Criminal Procedure 8 permits an indictment to "charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Federal Rule of Criminal Procedure 8 is "construed broadly in favor of initial joinder, allowing joinder of offenses that are of the same or similar character, even if such offenses do not arise at the same time or out of the same series of acts or transactions." *United States v. Hersh,* 297 F.3d 1233, 1241 (11th Cir. 2002). A severance is necessary if, without a severance, a defendant would be unable to receive a fair trial and he would suffer "compelling prejudice." *United States v. Lopez*, 649 F.3d at 1234; *United States v. Freyre–Lazaro*, 3 F.3d 1496, 1501 (11th Cir. 1993). However, the Eleventh Circuit has routinely recognized that a defendant has a heavy burden when trying to make the necessary showing for a severance, noting that "[t]he bar for showing [compelling] prejudice is so high that only in the rarest case can a defendant clear it ..." *Lopez* at 1235. See also *United States v. Hill*, 643 F.3d 807, 828 (11th Cir. 2011) (reasoning that compelling prejudice requires a showing that the jury would be "unable to sift through the evidence and make an individualized determination" as to each offense.)

Here, Defendant Mercery is charged in all three counts with violating the *same* criminal offense, Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Clearly, Defendant cannot carry his burden of showing that he would suffer "compelling prejudice" if all three counts are jointly tried. For instance, there is no merit to Defendant's argument that his "association with suspected narcotics traffickers" will cause a "substantial danger the jury will rely on such evidence when assessing whether he knowingly committed the crimes in Count 1 and 3." Doc. 32 at 5. Here, Defendant is arguing that his association with Hull and Arnold, both of whom are charged in a federal indictment with drug offenses, will cause the jury to impermissibly disregard the "exculpatory details" pertaining to Count 3 (the "repo men" shooting). First, the evidence pertaining to Count 3 that the Defendant claims is "exculpatory" is hardly persuasive. For instance, Defendant makes the outlandish claim that "there is substantial evidence showing that Mr. Mercery **was not the driver**, including physical evidence showing that someone else's fingerprints were retrieved from the driver's door of the white Honda." Doc. 32 at 6.

The fact that someone else's fingerprint was found on the door of the Honda Accord is hardly "substantial evidence" that the Defendant was not driving the Accord on the night of September 23, 2020. At best, this is merely evidence that the Defendant is not the only person who has ever occupied the Honda Accord or touched the driver's door prior to September 23, 2020 and left behind his or her latent print. Simply stated, the fingerprint could have been left by a number of individuals, such as the owner of the vehicle, an occupant of the vehicle, or even a searching officer who neglected to wear gloves. The following facts, however, constitute

overwhelming evidence that the Defendant possessed the Taurus .40 caliber pistol[4] found along the side of College Avenue on September 23, 2020:

- When the two "repo men" arrived, the Honda Accord was parked outside 115 Loblolly, which is the residence of Defendant's grandmother;
- In the area where the driver of the Accord discharged the pistol, officers located three .40 caliber shell casings;
- A Taurus .40 caliber pistol was located beside College Avenue, which was the route that the Accord traveled when fleeing from the scene of the shooting towards Bethel Homes;
- An FBI ballistics expert examined the shell casings from the scene of the shooting and concluded that they were fired from the Taurus .40 caliber pistol recovered beside College Avenue;
- Defendant's fingerprint was found on the magazine belonging to the recovered Taurus .40 caliber pistol;
- The individual who fled from the Accord on foot in Bethel homes was captured on ACCPD body camera footage and he had all the same physical characteristics as the Defendant;
- After reviewing a known photo of the Defendant, the pursuing ACCPD officer positively identified the Defendant as the individual who fled from the Accord;
- Inside the Accord, officers located 10 pieces of mail containing the Defendant's name;
- The sister of the individual who owned the Accord told police that the Defendant was a family friend and that he was driving the vehicle on the night of the incident; and
- Defendant's girlfriend, Derrica Mitchell, told officers that the Defendant was responsible for "shooting at repo men" and then running from the police in Bethel Homes.

Based upon the breadth of evidence above showing that Defendant committed the offense charged in Count 3, it is highly improbable that the jury would convict him based upon his

---

[4] In Count 3 of the Superseding Indictment, Defendant is charged with possessing the Taurus .40 caliber pistol, not with driving the Honda Accord (even though the evidence clearly shows that Defendant was operating the Accord on the night of the incident).

association with unsavory individuals, rather than relying on the incontrovertible evidence of his guilt.

The Government's evidence in all three counts is strong, if not overwhelming. In Count 1, Defendant filmed himself with Derrica Mitchell holding guns and boasting about firing a fully automatic rifle while inside the Athens Gun Club. The fact that Defendant attempted to conceal his identity in signing "Christopher Middlebrooks" on the gun range waiver form provides additional incriminating evidence – at least as it relates to the knowledge requirement set forth by the U.S. Supreme Court in *Rehaif*. In Count 2, Defendant's DNA was located on the Glock pistol found hidden in Ms. Hull's kitchen, and the Glock pistol was a mirror image of the gun that Derrica Mitchell described to police 10 days before as being used by the Defendant to assault her. Furthermore, Defendant uploaded to his Instagram account videos of himself brandishing what appears to be the same exact Glock pistol with an extended magazine and laser sight.

Lastly, Defendant makes the argument that "trying the counts together is likely to be inefficient and would not promote judicial economy." Doc. 32 at 7. Under Defendant's logic, it would be in the interest of judicial economy to hold three separate trials, rather than a joint trial of all the counts. Clearly, selecting three separate juries, presenting evidence three separate times, instructing a jury on three separate occasions, and receiving three separate verdicts is not the best use of limited resources and time. The three counts in the Superseding Indictment are non-complex 18 U.S.C. § 922(g)(1) firearms violations and should not be subject to severance.

## CONCLUSION

For the reasons stated above, Defendant's motion for severance of counts should be denied.

Respectfully submitted, this 30th day of September, 2021.

                PETER D. LEARY
                ACTING UNITED STATES ATTORNEY

                */s/ Michael D. Morrison*
                MICHAEL D. MORRISON
                Assistant United States Attorney
                Georgia Bar Number 153001
                United States Attorney's Office
                Middle District of Georgia
                Post Office Box 1702
                Macon, Georgia 31202-1702
                Telephone: (478) 752-3511
                Fax: (478) 621-2655

                *Attorneys for the United States of America*

## **CERTIFICATE OF SERVICE**

I certify that I have this day filed the foregoing United States' Response in Opposition to Defendant's Motion for Severance of Counts utilizing the Court's CM/ECF program, which will cause electronic notice to be provided to:

> Kamal Ghali
> Attorney for Defendant
> Bondurant Mixson & Elmore LLP
> One Atlantic Center
> 1201 West Peachtree Street NW
> Suite 3900
> Atlanta, Georgia 30309
> Telephone: 404-881-4173
> Fax: 404-881-4111
> Email: ghali@bmelaw.com

Respectfully submitted, this 30th day of September, 2021.

> PETER D. LEARY
> ACTING UNITED STATES ATTORNEY
>
> */s/ Michael D. Morrison*
> MICHAEL D. MORRISON
> Assistant United States Attorney
> Georgia Bar Number 153001
> United States Attorney's Office
> Middle District of Georgia
> Post Office Box 1702
> Macon, Georgia 31202-1702
> Telephone: (478) 752-3511
> Fax: (478) 621-2655
>
> *Attorneys for the United States of America*