IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | No. 3:21-CR-9 (CAR) |
| CEDDRICK MERCERY, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

ORDER ON MOTIONS TO SUPPRESS

Currently before the Court are Defendant Ceddrick Mercery's Motions to suppress evidence obtained from a warrant authorizing law enforcement to track the geolocation of Mercery's cell phone ("Geolocation Warrant") and to suppress evidence obtained from a warrant authorizing the search of Mercery's social media account on Instagram ("Instagram Warrant"). On December 15, 2021, the Court held a hearing. Having considered the evidence presented at the hearing, the parties' arguments, and the applicable law, the Court finds the affidavit provides sufficient probable cause for the judge to issue the Geolocation Warrant, and thus Mercery's Motion to Suppress evidence seized pursuant to the Geolocation Warrant [Doc. 46] is **DENIED**. The Court, however, finds the Instagram Warrant is unconstitutionally overbroad, and the good faith

exception cannot save the illegal search. Thus, Mercery's Motion to Suppress evidence seized pursuant to Instagram Warrant [Doc. 33] is **GRANTED**.[1]

## BACKGROUND

Defendant Mercery is charged in a second superseding indictment with four counts of possession of a firearm by a convicted felon. Among the evidence the Government intends to use against Mercery are the fruits gathered from the search and seizure of evidence authorized under the Geolocation and Instagram Warrants. These search warrants arise out of Mercery's alleged criminal conduct on three separate occasions in September and October 2020. The first incident occurred on September 23, 2020, where Mercery allegedly fired three shots from the driver's side window of a white Honda at two men attempting to lawfully repossess the vehicle (the "Repo Men Incident"). The second incident occurred on October 16, 2020, where Mercery allegedly assaulted and held his girlfriend at gunpoint (the "Domestic Assault Incident"). The third incident occurred on October 26, 2020, where officers found a gun at Shownica Hull's apartment allegedly belonging to Mercery (the "Hull Incident"). The following facts are taken from the affidavits in support of the search warrants.[2]

---

[1] Mercery also sought to suppress evidence obtained from a warrant authorizing the search of his Apple account. At the hearing on December 15, 2021, the Government represented that it planned to use only one piece of evidence gathered from the Apple warrant, and Mercery agreed that his request to suppress is **MOOT**. Transcript at 45-46 [Doc. 51].

[2] Frost Affidavit in support of Geolocation Warrant [Doc. 31-5]; Frost Affidavit in support of Instagram Warrant [Doc. 31-4].

Repo Men Incident

On September 23, 2020, Athens-Clarke County Police Department ("ACCPD") officers responded to a reported aggravated assault where the driver of a white 2011 Honda Accord fired three gunshots at two individuals attempting to lawfully repossess the car. After the Honda fled the area, an ACCPD patrol officer attempted to conduct a traffic stop. After a brief pursuit, the driver fled the Honda on foot into a residential community. Officers located multiple items addressed to Defendant Mercery inside the Honda, and the pursuing officer positively identified the individual as Defendant Mercery. Thus, state arrest warrants for aggravated assault were issued for Mercery.

Domestic Assault Incident

Less than a month later, on October 16, 2020, ACCPD officers responded to a complaint about a domestic dispute. The victim told the officers that early that day, her boyfriend, Defendant Mercery, had physically assaulted her and tried to force her to perform acts of sodomy at gunpoint. She described the firearm that the Defendant used against her as a pistol with an extended magazine and a "beam." ACCPD detectives obtained state warrants charging Defendant Mercery with aggravated assault with a firearm, aggravated assault by strangulation, battery, false imprisonment, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and attempted aggravated sodomy.

Geolocation Warrant

3

ACCPD officers were unable to locate Mercery to place him under arrest for the state warrants issued after the Repo Men Incident and the Domestic Assault Incident. Five days after the Domestic Assault Incident, on October 21, 2020, ACCPD Sergeant Dana Frost—who is also deputized as a Task Force Agent assigned to the FBI Middle Georgia Safe Streets Gang Task Force in Athens, Georgia—met with an FBI confidential source ("CS"). The CS provided Frost with a cell phone number the CS believed Defendant Mercery was using. Thus, on October 23, 2020, Frost applied for and obtained the Geolocation Warrant from Athens-Clarke County Superior Court Judge Eric Norris authorizing law enforcement to track the geolocation of Mercery's cell phone.

Hull Incident

On October 26, 2020, the geolocation data led officers to an apartment in Athens rented by Shownica Hull. Officers called Ms. Hull and requested that she exit her apartment. Once Hull was outside her apartment, she told officers that Defendant Mercery was inside her apartment with two other adult males. Mercery and the other two males exited the apartment, and officers immediately took Mercery into custody on the outstanding state arrest warrants.

Hull provided agents verbal and written consent to search her apartment. Officers located a black Glock .40 caliber pistol, Model: 22, Serial Number: DLM710, on top of a kitchen cabinet. The Glock was loaded with a bullet in the chamber, and it had an extended magazine and was equipped with a laser sight, matching the description of the

4

gun Mercery's girlfriend said he used in assaulting her ten days earlier on October 16, 2020.

Instagram Warrant

On November 16, 2020, Sergeant Frost applied for and obtained a warrant from Athens-Clarke County Superior Court Judge Eric Norris to search Mercery's Instagram account. In his affidavit, Frost detailed the Repo Men Incident, the Domestic Assault Incident, and the Hull Incident. Frost also explained that he reviewed the publicly available content on an Instagram account named https://www.instagram.com/sstunt_devasi and believed it belonged to Mercery based on Frost's personal familiarity with Mercery and his observation of multiple photos of Mercery posted on the account.

Photos and videos received under the Instagram warrant showed mercery in possession of what appeared to be the .40 caliber pistol recovered from Hull's apartment on October 26, 2020, and showed him holding what appeared to be an AR-15 style rifle at an indoor shooting range on August 25, 2020.

Mercery now seeks to suppress all evidence seized under the Geolocation and Instagram Warrants.

## DISCUSSION

The Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized."[3] Thus, when executing a search and seizure warrant, law enforcement officers must comply with all four of the requirements of the Fourth Amendment: (1) the warrant must be based on probable cause, (2) the probable cause must be supported by sworn testimony or an affidavit, (3) the place to be searched must be described with particularity, and (4) the evidence to be seized must be particularly described.[4]

## A. Geolocation Warrant

Mercery argues the fruits from the search of his geolocation data must be suppressed because Sergeant Frost knowingly omitted material information about the CS's felony criminal history which would have affected the issuing judge's probable cause determination.[5] The Court disagrees. Even assuming Frost's omission was deliberate and material, the affidavit provides other information that corroborates the CS's reliability and provides sufficient probable cause to justify issuance of the Geolocation Warrant.

In his affidavit in support of the Geolocation Warrant, Sergeant Frost detailed the facts concerning the Repo Men Incident and the Domestic Assault Incident which

---

[3] U.S. Const. amend. IV.

[4] *Groh v. Ramirez*, 540 U.S. 550, 557 (2004).

[5] Mercery did not request, nor is he entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Mercery fails to make a substantial preliminary showing that the omission of the confidential source's criminal history was essential to the finding of probable cause. As such, the Court **DENIES** Mercery's request to review the confidential source's criminal history.

resulted in the outstanding state warrants for Mercery's arrest. Frost then detailed his

contact with the CS:

> On October 21, 2020 Task Force Agent Dana Frost was in contact with a confidential source of the Federal Bureau of Investigation. This source has provided information to Frost that has resulted in the seizure of illegal drugs. Said source is also seeking to provide substantial assistance to law enforcement in connection with potential criminal charges. On this occasion the confidential source told Frost that it was aware than an individual it knows as "Stunt" is wanted by law enforcement. The confidential source further identified "Stunt" as Cedric Mercery. The confidential source provided (706) 380-9477 as Mercery's phone number. Additionally, the same said source told Frost that Mercery was currently located in Rocksprings Homes and provided a clothing description. Officers went to Rocksprings Homes and observed Mercery as he was described but were unable to take him into custody.[6]

"Probable cause exists when under the totality-of-the-circumstances there is a fair

probability that contraband or evidence of a crime will be found in a particular place."[7]

"For an officer's affidavit to support probable cause, it cannot be 'a mere conclusory

statement that gives the [issuing] judge virtually no basis at all for making judgment

regarding probable cause,' but rather 'must provide the [issuing] judge with a substantial

basis for making that judgment.'"[8]

In examining the sufficiency of an affidavit based on information provided by an

informant, "the informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly

---

[6] Frost Affidavit in support of Geolocation Warrant [Doc. 31-5, p. 15].
[7] *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[8] *United States v. James*, 601 F. App'x 789, 791-92 (11th Cir. 2015) (quoting *Gates*, 462 U.S. at 239).

relevant in determining the value of his report."[9] The factors are to be "understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[10]

Even if an affidavit omits felony convictions and "numerous bad acts" of an informant, if it contains other information that corroborates an informant's credibility, it is not so defective so as to be lacking in probable cause.[11] Indeed, if an "affidavit contains detailed, firsthand information that is specific in its allegations, and is therefore self-corroborating," the affidavit is "sufficient on its face to support [a] finding of probable cause by the [issuing judge]."[12]

Here, the omission of the CS's criminal history does not affect the probable cause determination because the affidavit provides other information that corroborates the CS's veracity, reliability, and basis of knowledge. Sergeant Frost states that the CS provided information that resulted in the seizure of illegal drugs, implying that they had a prior successful interaction. Moreover, the CS provided Frost with a clothing description and the location where the CS saw Mercery earlier in the day; officers then went to the location

---

[9] *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

[10] *Id.* at 233 (citation omitted).

[11] *United States v. Haimowitz*, 706 F.3d 1549, 1555-56 (11th Cir. 1983).

[12] *Id.* at 1555 (quotation omitted).

where the CS had seen Mercery and independently corroborated the CS's information when the officers observed Mercery as the CS described and in the location the CS provided. Finally, although Frost did not detail the CS's criminal history, he stated that the CS was "seeking to provide substantial assistance to law enforcement in connection with potential criminal charges."[13] Thus, the issuing judge knew the CS had a history of criminal activity. "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [issuing judges] in their probable cause determinations."[14] The affidavit is sufficient on its face to support the issuing judge's finding of probable cause.

Even if the Court were to find Frost's failure to include the CS's criminal history undermines the probable cause finding, the evidence seized pursuant to the warrant would nevertheless be admissible under the good-faith exception to the exclusionary rule under *United States v. Leon*.[15]

Under *Leon*, where officers have an objective basis to rely in good faith on a facially valid warrant, the evidence secured thereunder should not be suppressed even if the

---

[13] Affidavit in support of Geolocation Warrant, p. 15.
[14] *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).
[15] 468 U.S. 897 (1984).

warrant ultimately turns out to be defective.[16] Only in four specific situations is the good-faith exception inapplicable: (1) where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false; (2) where the judicial officer that issued the warrant "wholly abandoned his judicial role"; (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant issued is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."[17] To justify suppression of the evidence, "the alleged deliberate or reckless failure to include material information in the affidavit must conceal information that would defeat probable cause."[18]

Even if the Court found that Sergeant Frost's omission was both deliberate and material it would not defeat probable cause. In the hearing on December 15, 2020, Frost testified that the CS had never provided him with false statements or information, and the CS was not working for payment.[19] Moreover, Frost testified that the source had provided information which resulted in prior drug seizures. There was no reason for Frost to believe that the Geolocation Warrant was invalid, and he reasonably relied upon

---

[16] *Id.* at 922.

[17] *Id.* at 923.

[18] *United States v. Steiger*, 318 F.3d 1039, 1046 (11th Cir. 2003).

[19] Hearing Tr. at 23 [Doc. 51]. The Court "can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant." *United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002).

a warrant issued by a superior court judge. Thus, Mercery's Motion to Suppress evidence

seized pursuant to the Geolocation Warrant is DENIED.

### B. Instagram Warrant

Mercery also seeks to suppress the fruits of the search authorized by the Instagram

Warrant. Mercery argues the Instagram Warrant is not tailored to the probable cause

established in its supporting affidavit and instead requires Instagram to disclose virtually

every type of data to be found in a social media account. [20] Thus, the warrant is

unconstitutionally overbroad and cannot be saved under *Leon's* good faith exception

because the warrant is so facially deficient, no reasonable officer could rely on it. The

Court agrees.

---

[20] Mercery also challenges the sufficiency of Sergeant Frost's affidavit in support of the Instagram warrant and argues the affidavit fails to establish probable cause because (1) Sergeant Frost recklessly omitted information that would have undermined the CS's credibility and impacted the issuing judge's ability to find probable cause, and (2) the affidavit fails to establish a sufficient nexus between the place to be searched—Instagram—and the alleged crime—possession of a firearm by a convicted felon. The Court disagrees. Frost's omissions about the CS's criminal history and that the source sought to provide assistance to law enforcement are immaterial to probable cause. *See United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) ("Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant.") (internal quotation and citations omitted). Mercery's involvement in the three crimes with firearms, Frost's personal familiarity with Mercery, and his identification of Mercery in the Instagram posts handling large amounts of money and discussing crimes of violence provide sufficient probable cause for the judge to issue the warrant. The issuing judge's duty is to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability" that the items sought will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Frost's affidavit is not a "mere conclusory statement"; it provided the issuing judge with a "substantial basis" for finding probable cause that evidence of guns would be found on Mercery's Instagram account. *United States v. James*, 601 F. App'x 789, 791-92 (11th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).  The facts set out in the affidavit "are such a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged" and therefore justify the issuance of the warrant. *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990).

### 1. Affidavit and Warrant

On November 16, 2020, Sergeant Frost presented his affidavit in support of the search warrant for Defendant's Instagram account to Athens-Clarke County Superior Court Judge Norris. In the affidavit, Frost details his extensive law enforcement background and Mercery's alleged criminal conduct in the Repo Men Incident on September 23, 2020; the Domestic Assault Incident on October 16, 2020; and the Hull Incident on October 26, 2020. As in his affidavit in support of the Geolocation Warrant, Frost states that he met with a CS who had provided information that resulted in the seizure of illegal drugs and identified Mercery as "Stunt."[21]

Frost then stated that he reviewed the publicly available information he found in the Instagram account  https://www.instagram.com/stunt_devasi, and he believed that the account belonged to Cedric Demon Mercery based on his familiarity with Mercery and observation of multiple photos of Mercery posted under the account.[22] Frost also observed videos of Mercery holding what appeared to be large sums of money and discussing robbery and illegal drugs.[23]

Frost stated that based on his experience and training he "knows that individuals involved in the purchasing, use, and distribution of illegal drugs" will (1) "use social

---

[21] Frost Affidavit in support of Instagram Warrant [Doc. 31-4, pp. 3-5].
[22] *Id.* at p. 5.
[23] *Id.*

media such as Instagram to communicate with suppliers and customers"; (2) "often use the messaging feature of Instagram to arrange meetings, discuss amounts and prices of illegal drug sales and conduct other drug related business"; and (3) "often use Instagram to contact suppliers and customers, and often keep names or Instagram 'handles' associated with their Instagram account."[24]

Based on Frost's Affidavit, the judge authorized the Instagram Warrant. The warrant requires Instagram, LLC to disclose the following eighteen categories of information related to https://www.instagram.com/stunt_devasi:

> (1) All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;
> (2) All past and current usernames associated with the account;
> (3) The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;
> (4) All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;
> (5) All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;
> (6) All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;
> (7) All communications or other messages sent or received by the account October 26, 2019, until October 26, 2020;
> (8) All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content October 26, 2019, until October 26, 2020.
> (9) All photographs and images in the user gallery for the account;

---

[24] *Id.*

(10)     All location data associated with the ac[count] October 26, 2019 until October 26, 2020 including geotags March 16, 2019 until March 16, 2020;

(11)     All data and information that been deleted by the user October 26, 2019 until October 26, 2020.

(12)     A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

(13)     A list of all users that the account has "unfollowed" or blocked;

(14)     All privacy and account settings;

(15)     All records of Instagram searches performed by the account, including all past searches saved by the account October 26, 2019 until October 26, 2020;

(16)     All information about connections between the account and third-party websites and applications; and,

(17)     All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

(18)     Identify all linked by machine cookie data, as well as all other accounts associated by recovery email and/or phone number.[25]

The warrant states that all such information "is being possessed as evidence of a violation of Georgia law, namely: O.C.G.A. 16-11-131 Possession of a Firearm by a convicted felon."[26]

## 2. Analysis

### a. Overbreadth

"The Fourth Amendment requires that 'those searches deemed necessary should be as limited as possible'" to prevent "general, exploratory rummaging in a person's

---

[25] Instagram search warrant [Doc. 31-1, pp. 2-3].

[26] *Id.* at p. 3.

belongings.'"[27]  Thus, the Fourth Amendment "is intended to preclude 'general warrants' by requiring a 'particular description' of the things to be seized."[28]

The Eleventh Circuit addressed overbroad social media warrants in *United States v. Blake*, and signaled that warrants requiring social media sites like Facebook to disclose "virtually every kind of data that could be found in a social media account" are overbroad and unconstitutional.[29] The *Blake* panel ultimately did not decide whether the Facebook warrants violated the Fourth Amendment because "even if they did," the warrants fell into the good-faith exception to the exclusionary rule established by *United States v. Leon*.[30] But *Blake's* analysis of the warrants guides this Court's analysis on the Fourth Amendment violation in this case.

In *Blake*, the government successfully obtained two warrants which required Facebook to disclose such broad data as "every private instant message [the defendant] had ever sent or received, every IP address she had ever logged in from, every photograph she had ever uploaded or been 'tagged' in, every private or public group she had ever been a member of, every search on the website she had ever conducted, and every purchase she had ever made through 'Facebook Marketplace,' as well as her entire

---

[27] *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).
[28] *Id.* (quoting *Coolidge*, 403 U.S. at 467).
[29] *Id.* at 974.
[30] *Id.*; *United States v. Leon*, 468 U.S. 897 (1984).

15

contact list."[31]  The compelled disclosure was not limited to the period of time that the crime allegedly occurred, nor was it limited to the evidence of the crime. The warrants' only limitation was that "after all the data had been 'disclosed,' "law enforcement would only "seize[ ]" "data that 'constitute[d] fruits, evidence, and instrumentalities' of a specified crime."[32]

The *Blake* panel reasoned that the Facebook warrants were troublesome because they "required disclosure to the government of virtually every kind of data that could be found in a social media account. And unnecessarily so."[33] The warrants could have limited the search of private messages to only those sent or received from persons suspected of being involved with the offense.[34] And "the warrants should have requested data only from the period of time during which [the defendant] was suspected of taking part in the [offense]."[35] "Disclosures consistent with those limitations might then have provided probable cause for a broader, although still targeted, search of [the defendant's] Facebook account. That procedure would have undermined any claim that the Facebook warrants were the internet-era version of a 'general warrant.'"[36] The panel was unconvinced the government's reliance on cases where law enforcement seized a hard

---

[31] *Blake*, 868 F.3d at 966.

[32] *Id.*

[33] *Id.* at 974.

[34] *Id*. at 974.

[35] *Id.*

[36] *Id.*

drive from a defendant's home and then later searched it at the government's office were applicable in the social media account context. "When it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data."[37]

Like the warrants described in *Blake*, the Instagram Warrant is unnecessarily overbroad. The compelled disclosure is not tailored to evidence of the crimes under investigation, the time period during which Mercery allegedly committed the crimes, or the persons allegedly involved in the crimes. Instead, the warrant amounts to a general rummage of Mercery's entire Instagram account. Sergeant Frost's affidavit identifies three specific crimes involving the use of firearms in September and October 2020, and the warrant states that all information is being possessed as evidence of possession of a firearm by a convicted felon. But the warrant compels Instagram to produce eighteen broad categories of information. Although five of the categories have a date limitation going back to October 2019 (a year before the criminal activity identified in the affidavit) the breadth of the other thirteen categories effectively nullifies these temporal restrictions. Like in *Blake*, the warrant here requires Instagram to disclose virtually every type of data associated with Mercery's account including "all data and information associated with the profile page"; every Internet Protocol ("IP") address he has ever

---

[37] *Id.*

logged in from; every photograph and image on the account; every person Mercery follows, has unfollowed, or blocked, and every person who follows or has unfollowed or blocked Mercery; all account settings and cookie data; every "connection" between the account and third-party websites; and every communication between Instagram and any person "regarding" Mercery or his account.[38]

Indeed, the Instagram Warrant is even broader than the warrants described in *Blake*. The Facebook warrants in *Blake* contained a limitation that "after all the data had been 'disclosed,' "law enforcement would only "seize[ ]" "data that 'constitute[d] fruits, evidence, and instrumentalities' of a specified crime."[39] The Instagram Warrant, however, contains absolutely no limitation on what data law enforcement could seize after Instagram's broad disclosure.

Under Federal Rule of Criminal Procedure Rule 41(e)(2)(B), a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information," and "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." It is general practice for agents to comply with Rule 41 by creating a two-step process—the "search" wherein the warrant will compel the third party to produce a broad array of electronic information, and the "seizure" wherein the warrant will authorize the seizure

---

[38] Instagram search warrant, pp. 2-3.
[39] *Id.*

of a specified information. Here, the Instagram Warrant fails to describe any subset of information from the broad production of data that would be subject to seizure.

The Instagram Warrant authorizes the government to search and seize data that is not related to the probable cause established in Sergeant Frost's affidavit. It allows officers to search and seize virtually all of the information on Mercery's Instagram account, with no temporal limitations or limitations defined by the crime of possession of a firearm by a convicted felon. Such warrant is akin to a general warrant and therefore violates the Fourth Amendment's particularity clause.

b. Good Faith

When evidence is obtained in violation of the Fourth Amendment, it may be suppressed pursuant to the exclusionary rule.[40] The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a constitutional right of the party aggrieved."[41] In *Leon*, the Supreme Court held that when evidence is obtained by officers reasonably relying on a search warrant, the good-faith exception to the exclusionary rule may apply. Under the good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer to have relied in good faith on the judge's determination that there was probable cause to issue the warrant.

---

[40] *Leon*, 468 U.S. at 906.
[41] *Id.* (citation omitted).

"[T]he fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or in objective good faith."[42] "[T]o trigger the exclusionary rule," the law enforcement conduct in question, "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[43] Because the "sole purpose" of the exclusionary rule is to deter future Fourth Amendment violations, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses must of its force, and exclusion cannot pay its way."[44]

The Court cannot find law enforcement reasonably relied in good faith on the judge's determination that there was probable cause to issue the Instagram Warrant, and excluding the evidence obtained under the warrant will further the purpose of the exclusionary rule to deter future Fourth Amendment violations when seeking warrants to search social media accounts.

First, the Eleventh Circuit in *Blake* put law enforcement on notice that warrants authorizing the type of broad search of social media accounts like the one in this case are overbroad.  The Eleventh Circuit decided *Blake* in August 2017, over three years before

---

[42] *Messerschmidt v. Millender*, 565 U.S. 535. 546 (2012) (internal quotation omitted).
[43] *Herring v. United States*, 555 U.S. 135, 144 (2009); *see also Davis v. United States*, 564 U.S. 229, 240 (2011).
[44] *Davis*, 564 U.S. at 236-38 (internal citations and quotations omitted).

the Instagram warrant was issued in this case. And unlike the warrants in *Blake* that "may have violated the particularity requirement," and were "a close enough question," the Instagram Warrant clearly violates the Fourth Amendment's particularity requirement.[45]

Second, not only is the Instagram Warrant overbroad in describing what Instagram is compelled to produce, it contains no limitation on what the government can seize from the broad production of data. Indeed, the Instagram Warrant is broader than any social media warrant other courts have found violated the Fourth Amendment's particularity clause but were ultimately upheld under *Leon*.[46]

Finally, and most important, excluding the evidence obtained under the unconstitutional warrant will deter future violations. Social media networks like Instagram and Facebook are an ever-increasing form of communication and hubs of personal information for which law enforcement routinely seek and obtain search warrants. Officers need to know that a warrant must provide guidelines for determining what evidence may be searched and seized and must be tailored to the probable cause

---

[45] *Blake*, 868 F.3d at 974 (While the Facebook warrants "may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid.").

[46] *See, e.g., Blake*, 868 F.3d at 973-75 (warrant not so facially deficient where crime under investigation involved prostitution ring); *United States v. Purcell*, 967 F.3d 159 (2nd Cir. 2020) (officers reasonably relied on warrant where crime under investigation was prostitution ring); *United States v. Chavez*, 423 F. Supp. 3d 194 (W.D.N.C. 2019) (officers reasonably relied on warrant where crime under investigation was fraudulent telemarketing scheme); *United States v. Harris*, 2021 WL 3929270 (D. Minn. Sept. 2, 2021) (officer reasonably relied on warrant where the warrant specified the information to be seized subject to a temporal limitation); and *United States v. Burkhow*, 2020 WL 589536 (N.D. Iowa Feb. 6, 2020) (officers reasonably relied on warrant where crimes being investigated were complex and warranted a broader search).

established in the supporting affidavit. Thus, the Court finds the good faith exception inapplicable under the circumstances here, and Defendant's Motion to Suppress evidence seized pursuant to the Instagram Warrant is GRANTED.

## CONCLUSION

For the foregoing reasons, Mercery's Motion to Suppress evidence seized pursuant to the Geolocation Warrant [Doc. 46] is **DENIED**, and his Motion to Suppress evidence seized pursuant to the Instagram Warrant [Doc. 33] is **GRANTED**.

**SO ORDERED,** this 25th day of February, 2022.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT