IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. 3:21-CR-9 (CAR) |
| | ) |
| CEDDRICK MERCERY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT CEDDRICK MERCERY'S FIRST MOTION *IN LIMINE*** 

Defendant Ceddrick Mercery, by and through his counsel, respectfully files this Motion *in Limine* to Exclude or Limit Certain Government Evidence, Statements, Testimony, and Arguments at Trial.

## Background

This is a felon-in possession of a firearm case. The second superseding indictment (hereafter "the indictment") charges that Mr. Mercery violated 18 U.S.C. § 922(g), which prohibits convicted felons from possessing firearms, on four different dates. The four counts have nothing to do with each other except that they involve Mr. Mercery and a firearm. That is, the indictment doesn't charge a conspiracy or an ongoing scheme; it simply charges that Mr. Mercery possessed a firearm on four different dates.

### Count 1: The Gun Range (August 25, 2020)

In Count One, the Government alleges that on August 25, 2020, Mr. Mercery was a customer at an Athens, Georgia gun range and used one of the gun range's rifles at the range.

### Count 2: The Apartment Arrest (October 26, 2020)

In Count Two, the Government alleges that on October 26, 2020, Mr. Mercery possessed a firearm in the apartment belonging a woman named Shownicia Hull and a man named Terrance Arnold,[1] shortly before he was arrested outside of the apartment.

### Count 3: The "Repo Men" Incident (September 23, 2020)

In Count Three, the Government alleges that on September 23, 2020, when two men came to repossess a white Honda in the dark of night, they found Mr. Mercery sitting inside; Mr. Mercery drove away, and fired shots at the men as he left; Mr. Mercery then fled the scene in the white Honda; he was later spotted by law enforcement and fled in a high-speed chase; he then abandoned the white

---

[1] Notably, there was more than one convicted felon in the apartment on that date. On August 12, 2021, the U.S. Attorney's Office for the Middle District of Georgia charged Ms. Hull and Mr. Arnold with participating in a heroin trafficking conspiracy from August 1, 2020 through November 2020; with possessing heroin with the intent to distribute it; with maintaining a drug premises; and with possessing a firearm in furtherance of a drug trafficking offense. *See* Case No. 3:21-CR-00035-CAR-CHW.

2

Honda and escaped. Officers found a gun the next morning on the side of the road near where Mr. Mercery had been driving, which they believed matched the bullet casings found at the site of the shooting.

**Count 4: The 2019 Traffic Stop (August 21, 2019)**

In Count Four, the Government alleges that on August 21, 2019, an officer followed a car that Mr. Mercery was driving. When the officer attempted to stop him, Mr. Mercery fled from the car and abandoned two firearms on the side of the road. No witnesses saw Mr. Mercery possess these firearms. Notably, the Government appears intent on using Mr. Mercery's guilty plea to a state misdemeanor charge of reckless driving as proof in its case-in-chief.

## Discussion

In anticipation of trial, Mr. Mercery respectfully requests an order limiting or excluding the following ten categories of evidence, statements of counsel, and arguments from being presented at trial:

**1. Mr. Mercery's underlying felony convictions (due to stipulation)**

The Government has produced discovery showing that Mr. Mercery has a prior felony conviction for a drug offense and two other felonies. But given that Mr. Mercery is willing to stipulate to his status as a convicted felon, the Government should be barred from gratuitously introducing evidence about Mr.

Mercery's underlying convictions. *See Old Chief v. United States*, 519 U.S. 172, 191 (1997). The facts underlying those convictions, and even the types of convictions, are irrelevant to proving a violation of Title 18, United States Code, Section 922(g). To that end, any such argument, testimony, or evidence would run afoul of Fed. R. Evid. 403, because the jury would be tempted to convict on the grounds that Mr. Mercery is supposedly a "bad guy" with a rap sheet rather than because the Government met its burden of proving the elements of the charged conduct. Thus, the "risk of unfair prejudice [] substantially outweigh[s] the discounted probative value of the record of conviction, and it [would be] an abuse of discretion to admit the record when an admission was available." *Id.*

### 2. Any evidence or argument relating to Count 1 (*i.e.*, concerning Mr. Mercery's Instagram account or the fruits thereof)

This Court previously granted Mr. Mercery's motion to suppress evidence—including videos and other personal data—that the Government seized pursuant to an illegal Instagram warrant. Dkt. 55. The Government is therefore barred from using any such evidence at trial.

But the Government is also barred from using any of the "fruits" of that illegal search. To that end, the Government should be barred from introducing any evidence in support of Count 1 of the indictment, which charges that Mr.

4

Mercery possessed a firearm at a gun range on August 25, 2020.

During the December 15, 2021, evidentiary hearing, the Government acknowledged that suppressing the Instagram records would necessarily prevent it from proving the facts alleged in Count 1 (the gun range count), *i.e.*, it would bar the introduction of the fruits of the illegal Instagram search. *See, e.g.*, Dkt. 51 at 67-68 (AUSA Morrison: "Oh absolutely . . . We wouldn't have gotten to that other than that Instagram warrant, Judge. So that's true."). Given the Court's order suppressing the results of the Instagram search, and the Government's acknowledgment that it only learned about the facts supporting Count 1 from the Instagram account, Mr. Mercery respectfully requests that the Court exclude any evidence or argument supporting Count 1 of the indictment.

### 3. Assault Allegations in Count 2

Although he is not charged with such conduct, the Government has—on several occasions—referenced allegations that, on October 16, 2020, Mr. Mercery physically and sexually assaulted an individual with the initials D.M., and that he possessed a firearm during the incident. Case agents in this matter have gratuitously referenced these allegations in search warrant affidavits, using explicit and highly charged depictions of the allegations; and the Government has referred to it several times, including at Mr. Mercery's detention hearing.

Moreover, the agents who arrested Mr. Mercery on October 26, 2020, also secured arrest warrants related to assault charges. But any such evidence or testimony should be excluded.

*First*, the allegations are contradicted by subsequent witness statements, including that of D.M., who is the alleged victim. *Second*, historical allegations of assault have nothing to do with whether Mr. Mercery possessed a firearm on the dates identified in the indictment. So they are irrelevant under Fed. R. Evid. 401. *Third*, under Fed. R. Evid. 403, any probative value of the allegations is substantially outweighed by the risk of unfair prejudice. The sheer mention of such salacious allegations is likely to inflame the passions of the jury without shedding any light on whether Mr. Mercery possessed a firearm on the dates charged in the indictment. Moreover, any such testimony is likely to trigger a minitrial over the uncharged sexual conduct allegations; the presentation of such evidence would, within the meaning of Fed. R. Evid. 403, cause an "undue delay" and a "wast[e] time."

Accordingly, the Government should not be permitted to reference any conduct involving assault allegations whether in opening, closing, or by soliciting testimony about it, whether with respect to Mr. Mercery's request or for any other purpose.

### 4. Arrest Warrants for the October 2020 Arrest in Count 2

Relatedly, the discovery produced for Count 2 (the apartment arrest) states that law enforcement agents were attempting to execute state arrest warrants arising out of the September 23, 2020 "repo man" incident, as well as a warrant relating to charges of sexual assault. Because the reference to the arrest warrants may imply that Mr. Mercery is guilty of the charged offenses (solely because of the existence of the warrants), Mr. Mercery respectfully requests that the Government and its witnesses be barred from mentioning the existence of those arrest warrants.

### 5. iPhones found in Ms. Hull's Apartment in Count 2

Mr. Mercery expects that the Government may attempt to elicit testimony suggesting that when the police arrived at Ms. Hull's apartment on October 26, 2020, Mr. Mercery attempted to destroy his cell phones. Indeed, FBI Special Agent Hipkiss's search warrant affidavit speculates that Mr. Mercery tried to flush his iPhone down the toilet and destroy the phone.

*First*, there is no evidence that Mr. Mercery tried to destroy that phone. There were three other individuals in the apartment, and several phones were rendered inaccessible. *Second*, even if the allegation were true, it is irrelevant to the charged conduct. Whether Mr. Mercery tried to break his phone has nothing

to do with whether Mr. Mercery possessed a firearm on October 26, 2020. As SA Hipkiss testified on December 15, 2021, the Government obtained a search warrant for all iCloud backup data of Mr. Mercery's cell phones maintained by Apple. And, as SA Hipkiss testified, a review of those records revealed "nothing of evidentiary value to [the Government's] case." Dkt. 51, at 45. Indeed, there is no evidence that the iPhone contained photos or evidence that Mr. Mercery had ever possessed a firearm. Therefore, the evidence should be excluded under Fed. R. Evid. 401.

*Third*, any probative value of the allegation is substantially outweighed by the risk of unfair prejudice under Fed. R. Evid. 403. Rather than show that Mr. Mercery had possessed a firearm on October 26, 2020, the evidence would invite the jury to speculate that Mr. Mercery was hiding something potentially more nefarious. Therefore, the evidence, testimony, and any argument about the alleged destruction of the phones should be excluded.

### 6. Certain testimony about the specificity of the DNA analysis conducted on the Glock found in Hull's Apartment in Count 2[2]

The Government intends to introduce the expert testimony of Forensic Examiner Elizabeth Talley to testify that Mr. Mercery's DNA was likely located

---

[2] This Motion is raised in addition to Mr. Mercery's Motion to Exclude Ms. Talley's testimony under Fed. R. Evid. 702. Dkt. 77.

on a firearm found in Ms. Hull's apartment on October 26, 2020. But according to the Government's expert disclosure, Ms. Talley appears poised to subject the jury to the following brain teaser: "the DNA results from Item 112(1) [the firearm at issue] were 210 octillion times more likely if Ceddrick Demon Mercery and two unknown, unrelated people were contributors than if three unknown, unrelated people were contributors." Dkt. 64, at 2.

Given the facts of the case, this statement is meaningless, highly confusing, and vastly more prejudicial than probative. *See, e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ('Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury.") (citations omitted).

For starters, there were four unrelated people in Ms. Hull's apartment on October 26, 2020—namely, Ms. Hull, Terrance Arnold, Frederick Brown, and Mr. Mercery, each of whom could have contributed DNA to the firearm. And Ms. Talley does not appear to have analyzed the DNA of any other person in the room. But, more to the point, the phrase "210 octillion times more likely if [Mr.

Mercery] and two unknown, unrelated people were contributors than if three unknown, unrelated people were contributors" is not helpful to the jury. If the point is that Mr. Mercery's DNA is believed to be on the firearm, what does it add to inject a number beyond ordinary human comprehension? The phrase "210 octillion times" will substantially and unfairly prejudice the jury, regardless of the technical scientific meaning of Ms. Talley's testimony, and the witness should be barred from making this statement.

### 7. Apple iCloud data for Count 3

Mr. Mercery previously moved the Court to suppress the contents of the search of Mr. Mercery's Apple iCloud data. Thereafter, the Government stipulated that it would not use any evidence from the iCloud search warrant except for a single photograph of a man in bright pants. Therefore, the Court should exclude all evidence from the iCloud search warrant except for the single photo that the Government referenced at the hearing.[3]

### 8. Any evidence or argument relating to Count 3 (due to failure to produce and preserve evidence)

With respect to Count 3, the Government has failed to produce and

---

[3] Mr. Mercery notes that, as of the time of this Motion, the Government has not yet identified precisely which photo it was referring to (though Mr. Mercery has sent a pending request to obtain it and is awaiting a response).

preserve two critical pieces of evidence: a latent fingerprint and the vehicle allegedly involved in the shooting.

On September 23, 2020, police officers retrieved a latent fingerprint from the white Honda that Mr. Mercery is alleged to have driven. But according to Amanda Blair's analysis, the "latent fingerprint recovered [from the door of the white Honda] **does not match the known fingerprints for MERCERY**." *See* Bates Number USAO_004901, attached hereto as Exhibit A (emphasis added).

For nearly a year, Mr. Mercery has asked the Government to produce the underlying fingerprint records so that its own expert could review these records to identify the individual who drove the car on September 23, 2020. Yet, the Government has not produced this fingerprint record, despite the fact that (a) Ms. Blair conducted an examination of the record and (b) it constitutes quintessential *Brady* evidence that could prove that someone else drove the car on September 23, 2020. This failure to timely produce *Brady* evidence has severely prejudiced defense counsel, who intend to show that Mr. Mercery is innocent of this charge.

Mr. Mercery also asked that the Government run the latent fingerprint record through its relevant databases to identify whose prints they were. But on December 8, 2021, the Government represented that the print was not "suitable"

to run through any database, but again, without producing the fingerprint record to defense counsel.

Likewise, the Government acknowledged that it never processed into evidence the white Honda allegedly used by Mr. Mercery on September 23, 2020. Thus, counsel for Mr. Mercery has never had an opportunity to inspect the car for probative and potentially exculpatory evidence.

Beyond *Brady*, the failure to process or preserve the vehicle as evidence butts up against this Court's standing pretrial order:

> Upon request, *the government shall permit the defendant, his/her counsel*, and any experts selected by the defense *to inspect any vehicle*, vessel, or aircraft *allegedly utilized in the commission of any offense(s) charged*. Government counsel shall, if necessary, assist defense counsel in arranging such inspection at a reasonable time and place, by advising the government authority having custody of the thing to be inspected that such inspection has been ordered by the Court."

Dkt. 12, ¶ 11 (emphasis added). Rather than preserve or store the car as evidence, the Government simply released the white Honda back to the repo men that same evening (and without preserving any of the non-narcotics evidence found in the car). Without access to the white Honda, Mr. Mercery had no ability to inspect key elements of the crime scene (including how far the seat was pushed back, which could have revealed the perpetrator's height, whose prints were on

12

the steering wheel, and whether Mr. Mercery's DNA was in the car).[4]

The cumulative and aggregate effect of the Government's handling of the evidence has substantially prejudiced Mr. Mercery's ability to defend against the charge in Count 3. In light of these issues, Mr. Mercery respectfully requests that the Court bar the Government from introducing any evidence or argument in support of Count 3 at trial. *See* Court's Standard Rule 5 Order, at Dkt. 13, ¶ 5 ("Failure to disclose exculpatory evidence in a timely manner may result in consequences including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court."). In the alternative, Mr. Mercery requests that the Court issue an adverse inference instruction to the jury regarding the driver of the vehicle. *See Id*.

### 9. Mr. Mercery's August 2019 Guilty Plea in Count 4

In August 2019, Mr. Mercery pled guilty to misdemeanor reckless driving. The Government appears intent on using the guilty plea itself as proof that Mr.

---

[4] On August 17, 2021, the Government indicated that it would permit an inspection. On that date, counsel for Mr. Mercery wrote back and said: "I appreciate your willingness to give us a chance to inspect the white Honda. But given that the Government released the car and no longer has custody of it (and your belief that it has been cleaned countless times), I'm not sure what you're proposing. Please let me know what you have in mind." Defense counsel is not aware of any response to this request.

Mercery drove the car on August 21, 2019. But the <u>fact</u> of the guilty plea, as opposed to the <u>conduct underlying</u> the guilty plea, is irrelevant under Fed. R. Evid. 401 and violates Fed. R. Evid. 403. Therefore, the <u>fact</u> of his guilty plea to a misdemeanor reckless driving charge should be excluded. Moreover, an adjudication of guilt is a legal finding by another court. By introducing that legal finding (as opposed to the facts underlying the finding), the Government would be usurping the jury's role in the fact-finding process. Therefore, Mr. Mercery requests that the Court exclude any evidence about Mr. Mercery's guilty plea.

To the extent that the Court does permit the Government to introduce such evidence, Mr. Mercery reserves the right to introduce testimony showing that the Athens-Clarke County District Attorney's Office declined to prosecute Mr. Mercery for any crimes relating to the firearms found near the car because of the absence of sufficient evidence.

### 10. Amanda Blair's Testimony about Mr. Mercery's palm print found on the digital scale in Count 4[5]

The Government has represented that it intends to introduce expert testimony from Amanda Blair relating to the conduct alleged in Count 4. That is, Ms. Blair intends to testify that Mr. Mercery's palm print was found on a digital

---

[5] This Motion is filed in addition to Mr. Mercery's Motion to Exclude Ms. Blair's testimony under Rule 702.

scale that officers found inside of the car he allegedly drove in August 2019. But that testimony should be excluded under Fed. R. Evid. 401 and 403.

For starters, a print on a digital scale inside of a car has nothing to do with whether Mercery possessed two firearms on the side of the road. Assuming the scale somehow relates to a drug offense, Mr. Mercery isn't charged with any drug offenses, and there is no evidence to support any such charges. Such testimony would only serve to smear Mr. Mercery as a drug user or drug dealer.

Second, her analysis doesn't affirmatively identify Mr. Mercery; it just says that the latent print has a "great deal of corresponding ridge detail with no differences that would indicate they were made by differing palms." Dkt. 61, at 2. That kind of expert testimony has the potential to unduly sway the jury. Given the absence of any probative value of a print on a digital scale given the charged conduct, and the highly qualified opinion of Ms. Blair, the risk of unfair prejudice is substantially outweighed by permitting the testimony. *See, e.g.*, *Frazier*, 387 F.3d at 1263 (citations omitted).

## **CONCLUSION**

Mr. Mercery respectfully requests that the Court exclude the above-referenced evidence, testimony, and arguments.

Respectfully submitted this 21st day of July, 2022.

>***/s/ Kamal Ghali***
>Kamal Ghali
>Ga. Bar No. 805055
>E. Allen Page
>Ga. Bar No. 640163
>*Attorneys for Defendant*
>**BONDURANT MIXSON & ELMORE LLP**
>One Atlantic Center, Suite 3900
>1201 West Peachtree Street NW
>Atlanta, GA 30309
>P: 404.881.4173
>F: 404.881.4111
>Email: ghali@bmelaw.com
>Email: page@bmelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on today's date I electronically filed the *FIRST MOTION IN LIMINE* with the Clerk of the Court using the CM/ECF system.

*/s/ Kamal Ghali*
Kamal Ghali
Attorney for Defendant
**BONDURANT MIXSON & ELMORE LLP**
One Atlantic Center, Suite 3900
1201 West Peachtree Street NW
Atlanta, GA 30309
P: 404.881.4173
F: 404.881.4111
Email: ghali@bmelaw.com