IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. 3:21-CR-9 (CAR) |
| | ) |
| CEDDRICK MERCERY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT CEDDRICK MERCERY'S SUPPLEMENTAL REPLY
IN SUPPORT OF HIS MOTION(S) *IN LIMINE***

Mr. Mercery files this Supplemental Reply in support of certain of his motions *in limine*.[1]

### 7. Apple iCloud data for Count 3

After Mr. Mercery filed his Motion, the Government again represented—as it first did in the suppression hearing, *see* Dkt. 51, at 46. (AUSA Morrison: "There is one photo, Judge, that I plan to use on the date of the repo man shooting September 23, 2020.")—that it only intends to use one photo from the Apple iCloud account. Accordingly, the Court should grant Mr. Mercery's uncontested Motion.

---

[1] By replying in support of some of the motions, Mr. Mercery does not intend to waive other motions.

As for the remaining "photo," the Government disclosed in its Response what is in fact a collage of 35 photos, two of which allegedly show Mr. Mercery wearing blue pants. *Id*. Moreover, the collage contains substantive text stamped across the top that reads, "September 21 – 23, 2020." *Id*. Acknowledging that the collage of 35 photos is potentially broader than what it previously represented, the Government explained that it "has no objection to redacting all the other images from the screenshot." *Id*.

Mr. Mercery does not move at this stage to exclude the photo, but raises two objections that should be addressed before the photo can be admitted:

*First*, the collage contains highly prejudicial stray text that runs afoul of Fed. R. Evid. 403. So some redaction is necessary. But redacting the photo to permit the Government to show <u>only</u> two of the images (and allowing the Government to blow them up out of proportion) isn't appropriate either. Such wide-ranging redactions would give the jury the impression that there are other censored photos, explicit materials, and invite them to speculate that the parties are hiding evidence of Mr. Mercery doing something worse, which would still violate Fed. R. Evid. 403. Thus, if the photo is to be presented, it must be presented as part of the overall collage, but with targeted redactions of prejudicial material.

2

*Second*, even assuming the collage were admissible, the Government will still have to properly authenticate it at trial. As it stands, the business records certification, at Dkt. 97-1, doesn't purport to authenticate the collage at all. The collage has no Bates stamp, and there is no reason to believe that the business records certification is associated with that particular Apple record.

### 8. Any evidence or argument relating to Count 3 (due to failure to produce and preserve evidence)

The Government's Response about the destroyed evidence is a straw man. It doesn't address the basis for Mr. Mercery's Motion and instead cites an inapplicable standard that governs a type of motion that Mr. Mercery didn't raise. Indeed, the Government relies on the standard for a **motion to dismiss** due to a *Brady* violation. But Mr. Mercery's Motion arises out of the Government's violations of this Court's standing pretrial order, which specifically requires that "the government shall permit the defendant . . . to inspect any vehicle . . . allegedly utilized in the commission of any offense(s) charged," Dkt. 12, ¶ 11; this Court's Standard Rule 5 Order, Dkt. 13; and principles governing the preservation of evidence.² *See United States v. Johnson*, 996 F.3d 200, 217 (4th Cir. 2021) (adverse inference jury instruction within the court's discretion). The

---

² *Cf.* Fed. R. Evid. 102 ("The rules should be construed so as to administer every proceeding fairly . . . to the end of . . . securing a just determination.").

Government's failure to preserve exculpatory evidence, and to permit its destruction, means that Mr. Mercery had no opportunity to inspect the white Honda allegedly used to commit the charged offense in Count 3 or to obtain the exculpatory evidence contained within the car.

Here, the Government does not dispute that the release of the white Honda violated the standard pretrial order; it doesn't dispute that the evidence within the car has been lost or destroyed; and it doesn't dispute that Mr. Mercery has not been able to inspect the car. Instead, it seeks to distance itself from the decisions of the Athens-Clarke County Police Department and to disavow that agency as a member of the prosecution team; it shockingly suggests that the decision to permit the destruction of the evidence was reasonable (and part of ACCPD's policy); and contrary to applicable U.S. Department of Justice guidance, it refuses to recognize the powerful exculpatory value of evidence showing that someone else drove the car on September 23, 2020.

But, as explained below, the Court has **broad discretion** to address the destruction of exculpatory evidence including through remedies such as "exclu[ding the] evidence" and issuing "adverse jury instructions." Dkt. 13, ⁋ 5; *see also Johnson*, 996 F.3d at 217. Given the importance of the destroyed evidence, the Court should, at a minimum, issue an adverse jury instruction here. Indeed,

the Government does not dispute the fact that the Court has broad discretion to issue appropriate jury instructions including in situations like this.

### A. The 2011 Honda undisputedly contained material exculpatory evidence.

The Government first argues that it wasn't obligated to preserve the Honda (or its contents) for inspection because the car didn't contain material exculpatory evidence. That's not true.

For starters, the only forensic evidence retrieved from the car was a fingerprint on the door handle that **belongs to someone else**. It is obvious that evidence showing that someone else drove the car on September 23, 2020, is exculpatory; such evidence undercuts a critical component of the Government's theory of the case—namely, that Mr. Mercery drove the car that night. By contrast, there was **zero** forensic evidence tying Mr. Mercery to that car, whether DNA or fingerprint evidence. Thus, the print likely belongs to whoever drove the car that night.

More concerning, however, is that the car reportedly contained documents linked to another man, Frederick Wade. Notably, the Government only recently disclosed evidence confirming that Mr. Wade—not Mr. Mercery—primarily drove that car. *See* FD-302, dated 3/18/22, attached as **Exhibit A** (interview with

the vehicle's owner, Jessica Harris, in which she said "that she purchased the car for Fredrick Wade and that she considers Wade to be a brother.").[3] So when the Government argues that Mr. Mercery "merely speculates what exculpatory evidence would have been located in the Honda Accord," *see* Dkt. 95, at 6, that argument is belied by the evidence discovered from the car.[4]

---

[3] Separate from the failure to preserve the evidence, the instances of untimely disclosures also violate the Court's Standard Rule 5 Order, which states that "Failure to disclose exculpatory evidence **in a timely manner** may result in consequences including, but not limited to, exclusion of evidence, adverse jury instructions[.]" Indeed, it was only **after** Mr. Mercery filed his Motion that the Government produced the exculpatory evidence, which it had in its possession:

- The Government failed to produce that latent fingerprint for **over one year**, despite repeated requests by defense counsel. After telling defense counsel in December 8, 2021, that "you have been provided all there is regarding the fingerprint evidence," the Government apparently re-discovered the latent fingerprint on July 26, 2022, even though the Government collected the print in September 2020, nearly two years ago. Making matters worse, the Government now claims that the fingerprint is not readable enough to run it through any database at the FBI's disposal that might point the finger at another suspect, *see* Dkt. 95, at 25 n.2, a contention that Mr. Mercery's expert will rebut. *See* Dkt. 103.

- And the interview with Jessica Harris is dated 3/11/22, meaning that the Government withheld the information for **almost five months**.

These untimely disclosures compound the problem of the destroyed evidence and only demonstrate further why a judicial remedy is warranted here.

[4] The Government further suggests that none of this exculpatory evidence is material because other evidence points to his guilt. Indeed, the Government's position appears to be that Mr. Mercery is so guilty that there's no such thing as exculpatory evidence. This dangerous position is contrary to U.S. Department of Justice guidance about the disclosure of potentially exculpatory evidence.

6

Moreover, the Government's argument makes no sense in the context of evidence spoliation. The whole point is that Mr. Mercery **has never had the opportunity to further develop the exculpatory evidence** retrieved from the car because of the Government's conduct. As the Government itself put it when counsel for Mr. Mercery asked to inspect the vehicle, "[s]ince it was released almost a year ago and has likely been cleaned countless times and occupied by who-knows, I cannot imagine that there would still be prints remaining from the night of the incident." *See* August 12, 2021, email from Government counsel. Mr. Mercery was thus denied the opportunity to retrieve additional DNA evidence from the car, to determine what documents or other objects were in the car, or to examine evidence from the driver's seat, including whether the seat position is consistent with Mr. Mercery's height.

In short, it's clear that the release of the white Honda resulted in the destruction of at least some exculpatory evidence, including a birth certificate in the name of Frederick Wade. But Mr. Mercery has no way of knowing what *additional* exculpatory evidence may have been present. That's the fundamental problem with the Government's conduct.

### B. The Government's conduct as it relates to the white Honda (including its failure to preserve evidence from within the car) violated its preservation and disclosure obligations.

Given the exculpatory value of the evidence associated with the car, the Government had a clear obligation to preserve and disclose it. That is true from the plain text of the Court's orders. But it's also clearly outlined in the U.S. Department of Justice's Justice Manual, which explains that exculpatory evidence must be disclosed, even if the evidence would not, on its own, necessarily yield an acquittal:

> Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but <u>that may not, on its own, result in an acquittal</u> or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, <u>this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt</u> as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

*See* Justice Manual, at Section 9-5.001 ("Policy Regarding Disclosure of Exculpatory and Impeachment Information."). Indeed, the disclosure obligations apply to any evidence that is "inconsistent with any element of any crime . . . regardless of whether the prosecutor believes that such information will make the difference between conviction and acquittal of the defendant charged with a

crime." *Id.*[5]

Incredibly, however, the Government argues that it is somehow not responsible for the choices of the Athens-Clarke County Police Department when it comes to the handling of evidence and the production of *Brady* materials; in its view, because federal law enforcement didn't get involved until after the car was already gone, it's not responsible for anything that happened before that moment. But that argument *also* runs contrary to DOJ guidance—in this instance, guidance about what constitutes the prosecution team. *See* Justice Manual, at Section 9-5.001 ("Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.").

The argument also belies common sense. If the federal government wants to step in and prosecute a defendant by relying on the benefit of the state's investigation, it cannot then turn around and ignore the failures of the state investigation. Those failures, like any other aspect of the investigation, are a part

---

[5] Moreover, "[a] prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed <u>regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime</u>." *Id.* (emphasis added).

9

of the case. *Cf. United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979) (noting that "extensive cooperation between the investigative agencies convinces us that the knowledge of the state team . . . must be imputed to the federal team"). The Government must take the good with—as here—the bad.

Here, the prosecution team undoubtedly encompasses the Athens-Clarke County Police Department officers who participated on the case. Indeed, the lead case agent, FBI Task Force Officer Dana Frost, is employed by Athens-Clarke County Police Department and has sworn out both state and federal warrants in this case. As such, ACCPD's decisions—including the decision not to preserve the vehicle or the evidence inside—are properly considered the decisions of the Government and prosecution here.

### C. The Government's failure to preserve the 2011 Honda was admittedly intentional.

The Government willfully and deliberately failed to preserve the evidence in and on the 2011 Honda. Indeed, the Government admits as much. It contends that it released the vehicle pursuant to an Athens-Clarke County Police Department policy. See Dkt. 95 at 25 (noting that the policy is to "release the vehicle . . . once a vehicle is processed for evidence."). Notably, the Government cites no evidence for that policy: no handbook about the release of vehicles, no procedures about collecting evidence from inside a car, etc.

But whatever the policy: what matters is that the Government <u>admits</u> that this isn't a case involving the accidental destruction of evidence or the inadvertent deletion of a file. Instead, it deliberately decided to release the vehicle—not to the owner, but to the *repo men*—without keeping any of the documents or objects found inside (other than some narcotics evidence), even though it used some of that evidence (such as Mr. Mercery's mail allegedly found within the car) to identify Mr. Mercery. That decision is baffling. But it also means that Mr. Mercery will never have access to any additional evidence from the car that would have shown that he wasn't the driver.

### D. The failure to preserve the car and other evidence found within it warrants exclusion or an adverse inference jury instruction.

As explained above, the Government does not dispute (or even acknowledge the fact) that, aside from its *Brady* obligations, there are court orders that address the preservation and production of the evidence at issue here. First, this Court's standard pretrial order contemplates that defense counsel will be able to "inspect any vehicle . . . utilized in the commission of the offense charged." Dkt. 12, at ¶ 11. Second, the Court's standard Rule 5 Order requires the production of exculpatory evidence in a "timely manner." Dkt. 13. The Government does not dispute that it violated those orders.

11

As a result, and in keeping with the Court's order about potential "consequences" for those failures, the Court has wide discretion to impose judicial remedies to protect Mr. Mercery's rights and ensure the integrity of the evidence that will be presented. *See United States v. Johnson*, 996 F.3d 200, 217 (4th Cir. 2021) (adverse inference jury instruction within the court's discretion).

More importantly, and contrary to the Government's contentions, which focus solely on *Brady* and the possible dismissal of the indictment, *see* Dkt. 95 at 25-26,[6] the Court is <u>not</u> required to find that the Government exhibited bad faith to justify an adverse inference jury instruction; **it only needs to find that the conduct was <u>intentional</u>**. *See Johnson*, 996 F.3d at 217 ("[T]here simply needs to be a showing that the party's intentional conduct contribute[d] to the loss or destruction of [the] evidence.") (emphasis added). And, as the discussion above

---

[6] Mr. Mercery cites two cases suggesting that the Court should not dismiss the case without proof that the Government destroyed evidence in bad faith. *See United States v. Rolande-Gabriel*, 938 F.2d 1231 (11th Cir. 1991); *United States v. Pineda Castro*, 795 Fed. Appx. 635 (11th Cir. 2019). But neither case addresses whether adverse jury instructions may be a remedy for the loss of important evidence. And in fact, in *Rolande-Gabriel*, the Eleventh Circuit explains that "[t]he government . . . has a[n] obligation to try in good faith to preserve important material." *Id.*, at 1238. Moreover, *Rolande-Gabriel* involved the destruction of certain liquid evidence that (a) was only used at sentencing, not at trial and (b) wasn't exculpatory. Here, Mr. Mercery has shown that the white Honda had at least two pieces of exculpatory evidence, namely, a fingerprint belonging to someone other than Mercery and a birth certificate for the main driver of the car.

shows, the Government undisputedly acted intentionally when it failed to preserve exculpatory evidence, known and unknown.

In so doing, the Government ran afoul of two court orders and violated basic principles relating to the preservation of material evidence. Basic fairness dictates that the evidence relating to Count 3 should either be excluded from the Government's case, or, at the very least, that the jury be instructed that they may infer that that the destroyed evidence relating to the white Honda would have been favorable to the defendant.

## CONCLUSION

Because of the Government's failure to preserve exculpatory evidence and to disclose other exculpatory evidence in a timely manner, Mr. Mercery respectfully requests that the Court either exclude the evidence supporting Count 3 or issue an adverse inference instruction to the jury.

Respectfully submitted this 11th day of August, 2022.

*Signatures appear on the following page.*

*/s/ Kamal Ghali*
Kamal Ghali, Ga. Bar No. 805055
E. Allen Page, Ga. Bar No. 640163
*Attorneys for Defendant*
**BONDURANT MIXSON & ELMORE LLP**
One Atlantic Center, Suite 3900
1201 West Peachtree Street NW
Atlanta, GA 30309
P: 404.881.4173
F: 404.881.4111

## CERTIFICATE OF SERVICE

I hereby certify that on today's date I electronically filed the **DEFENDANT CEDDRICK MERCERY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION(S)** *IN LIMINE* with the Clerk of the Court using the CM/ECF system.

>*/s/ Kamal Ghali*
>Kamal Ghali
>*Attorney for Defendant*
>**BONDURANT MIXSON & ELMORE LLP**
>One Atlantic Center, Suite 3900
>1201 West Peachtree Street NW
>Atlanta, GA 30309
>P: 404.881.4173
>F: 404.881.4111
>Email: ghali@bmelaw.com